(No. 37345.—)

Board of Education of Gardener School District No. 112, Peoria County, Appellant, *vs.* County Board of School Trustees of Peoria County *et al.,* Appellees.

*Opinion filed March 27, 1963.—Rehearing denied June 18, 1963.*

Schaefer and Hershey, JJ., dissenting.

Robert L. Burhans, of Peoria, for appellant.

Davis, Morgan & Witherell, of Peoria, for appellees.

Mr. Chief Justice Solfisburg delivered the opinion of the court:

These proceedings originated with the filing with the County Board of School Trustees of Peoria County of a petition to detach certain territory from Gardener School District No. 112, Peoria County, and annex the same to Peoria Heights School District No. 120, Peoria County. On January 17, 1962, the County Board of School Trustees granted the petition detaching the territory from plaintiff District No. 112 and annexing it to defendant District No. 120. A copy of this decision was served upon plaintiff on January 18, 1962.

Thereafter, on February 20, 1962, plaintiff filed its complaint in the circuit court of Peoria County under the

provisions of the Administrative Review Act. (Ill. Rev. Stat. 1961, chap. 110, pars. 264-279). Motions to dismiss the complaint were filed by defendants on the ground that it had not been filed within 10 days after the date that a copy of the decision was served upon the party affected thereby, as required by section 4B—5 (new section 7—7) of the School Code (Ill. Rev. Stat. 1961, chap. 122, par. 7—7) and section 4 of the Administrative Review Act.

On April 17, 1962, the circuit court allowed the motions for dismissal, and on April 20, 1962, the order of the circuit court finding the filing of the complaint within the 10-day period to be a condition precedent to the exercise of the court's jurisdiction, and dismissing the plaintiff's complaint and cause of action, was entered. It is from this order of April 20, 1962, that this appeal is taken.

The plaintiff contends the provisions of the School Code and the Administrative Review Act relating to review of decisions of a county board of school trustees are in violation of the Illinois constitution, and particularly article IV, section 22, and article VI, section 29. The jurisdiction of this court on direct appeal rests upon the fact that the validity of a statute is involved.

Prior to 1955 all administrative decisions under the School Code, as well as others under various other statutes now numbering approximately 95, were reviewable on the same basis: *e.g.*—upon complaint in the circuit court filed within 35 days from the date of service of a copy of an administrative decision upon the party thereby affected. In 1955 the General Assembly adopted Senate Bill 469, an amendment to the Administrative Review Act, and Senate Bill 470, an amendment to the School Code, which reduced the time within which complaints for review of decisions of county boards of school trustees could be filed to 10 days from the date of service of a copy of the board's decision.

This appeal then resolves itself into a consideration of whether the 10-day limitation on filing a complaint to re-

view a final administrative decision of the county board of school trustees, as distinguished from the 35-day limitation applicable to all other reviews of administrative decisions under the School Code is a "local or special law" in violation of article IV, section 22, of the constitution, or provides for proceedings and practice in the circuit and superior courts which are not uniform, in violation of article VI, section 29. *People ex rel. Reilly* v. *City of Chicago,* 337 Ill. 100, at 105; *Keig Stevens Baking Co.* v. *City of Savanna,* 380 Ill. 303, at 310.

The right of appeal is not essential to due process, and is one which may or may not be granted in a given situation as the legislature deems appropriate. (*Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103, 108, and cases there cited.) However, defendants' conclusion that since the right may be denied completely, it may also be granted on *any* terms and subject to *any* conditions which the legislature may deem appropriate does not necessarily follow. Rather, the legislature, once it undertakes to grant or deny the right, must do so without sacrificing uniformity as to proceedings and practice, and without enacting special legislation. This court has sustained legislation affecting the courts which was attacked on the grounds of lack of uniform application or as being special legislation by finding "rational differences" in the classification of the parties, (*Bagdonas* case; *Saylor* v. *Duel,* 236 Ill. 429; *McGinnis* v. *McGinnis,* 289 Ill. 608); and by finding a "reasonable basis" for the classification (*Bagdonas* case, p. 110; *Stewart* v. *Brady,* 300 Ill. 425); and by finding the classification was not "arbitrary". (*Bagdonas* case; *Stewart* v. *Brady;* *Louisville, New Albany and Chicago Railway Co.* v. *Wallace,* 136 Ill. 87.) It has been said that "The legislature is not required to be scientific, logical or consistent in its classification". *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103, 109.

But this legislative power is not unbounded, and a

reasonable basis for discrimination or classification must be found to exist in order to validate such legislative actions. (*Donoho* v. *O'Connell's, Inc.,* 18 Ill.2d 432, at 437; *People ex rel. Adamowski* v. *Public Building Com.* 11 Ill.2d 125, at 148 and 149.) Obviously the 10-day period is an exceedingly brief time within which to secure from a school board the necessary consideration and action preliminary to filing a complaint to review an adverse decision. The legislative history of these provisions yields no clue to the need for summary action. No reasons have been suggested to us which necessitate such discrimination against those desiring judicial review of a decision of a county board of school trustees. Even in disconnection proceedings changing school district boundaries, any decision by the county board becoming final between September 1 and June 30 of any year does not affect the administration of or attendance at the schools until the following July 1. (Ill. Rev. Stat. 1961, chap. 122, par 7—9.) Defendants call our attention to the 5-day requirement applicable to the filing of notices of appeal under the forcible entry and detainer statute, (Ill. Rev. Stat. 1961, chap. 57, par. 19) as evidence of the legislative authority to differentiate between appeal periods in different types of proceedings. While no constitutional question has been before us on that section, we can conceive of substantial reasons for providing short appeal periods in forcible detainer matters—not the least of which may be the possibility of serious or irreparable damage by irresponsible tenants who might otherwise remain longer in possession.

Defendants call our attention to the decision of this court in *Board of Education* v. *Brittin,* 11 Ill.2d 411, and of the Appellate Court in *Hailey* v. *County Board of School Trustees,* 21 Ill. App. 2d 105, as the only two reported cases in which the 10-day filing requirement is mentioned. However, as defendants concede, no question was raised in either case as to the constitutionality of the amendments, and we

do not regard these cases as controlling or persuasive on this issue.

The difficulty here lies, not in the absence of legislative power to provide differing periods within which review may be perfected, but in the absence of any "reasonable basis" or "rational difference" for the apparently arbitrary classification here present. Finding no reasonable basis for the' restrictive provisions of either of the 1955 amendments, we hold unconstitutional the portions of each requiring the complaint for review to be filed within 10 days following service of a copy of the decision sought to be reviewed upon the party seeking review.

The order of the circuit court of Peoria County of April 20, 1962, is accordingly reversed, and the cause remanded with directions to proceed with a hearing on the merits.

*Reversed and remanded, with directions.*

Mr. JUSTICE SCHAEFER, dissenting:

It is interesting to note that in none of the cases cited by the majority was the statute involved held invalid. The settled principle that has always governed the decision of cases like this one is stated as follows in *Bagdonas* v. *Liberty Land and Investment Co.* 309 Ill. 103, 109-110. "The legislature is not required to be scientific, logical or consistent in its classifications. In order to authorize a judicial review of such classifications it must clearly appear that there is no fair reason for the law that would not require with equal force its extension to others not included. The legislature may determine upon what differences a distinction may be made for the purpose of statutory classification, between provisions otherwise having resemblance, if such power is not arbitrarily exercised and the distinction has a reasonable basis. (*Stewart* v. *Brady*, 300 Ill. 425; *International Harvester Co.* v. *Missouri*, 234 U.S. 199.) The burden rests upon one attacking the classification in a

law to show that it does not rest upon a reasonable basis but that it is arbitrary. A distinction in legislation is not arbitrary if any state of facts can reasonably be conceived that would sustain it, and the existence of such a state of facts at the time the law was enacted must be assumed. *Lindsley* v. *Natural Carbonic Gas Co.* 220 U.S. 61; *Stewart* v. *Brady, supra; Louisville, New Albany and Chicago Railway Co.* v. *Wallace,* 136 Ill. 87."

For some reason this settled principle is not applied to this case. The opinion of the majority indicates an awareness of the principle in its discussion of the five-day limitation upon notice of appeal in forcible entry and detainer cases, saying, "While no constitutional question has been before us on that section, we can conceive of substantial reasons for providing short appeal periods in forcible detainer matters—not the least of which may be the possibility of serious or irreparable damage by irresponsible tenants who might otherwise remain longer in possession."

But when it deals with the statute actually before the court, the majority puts the burden of establishing the validity of the legislative classification upon the litigant who seeks to sustain the validity of the legislation. The complications that attend delay in settling school district boundaries are obvious. Until the boundaries are settled neither school district can know the number of pupils that will attend, the number of teachers and classrooms that will be required, or the number of school buses and drivers of school buses that will be needed. Changes in tax rates may be required, and it may be necessary to issue bonds to provide essential facilities. Yet the majority refuses to conceive of any substantial reasons that justify an unusually expeditious appeal.

These same complications account for the legislative provision that defers the effective date of a change in school district boundaries during the school year. This provision is referred to by the majority as a reason for invalidating

the expeditious-appeal provision actually before us. Yet this provision is itself a deviation from the kind of rigid uniformity that the majority demands, for other school administrative decisions become effective at once. It can be sustained only by exactly the same considerations that are held insufficient to sustain the expeditious appeal.

The majority opinion can only serve to cast doubt upon a large number of familiar procedural departures from absolute uniformity. The development of the Administrative Review Act, for example, was a slow process. Originally, in 1945, the decisions of 49 administrative agencies were made reviewable under the act. In 1949, 34 more agencies were added (Davis, Review of Administrative Action, 44 Ill. L. Rev. 565, 627) but even today there are agencies whose administrative decisions are not reviewable by this "uniform" method. See e.g. (Commerce Commission) Ill. Rev. Stat. 1961, chap. 111⅔, par. 72; (Industrial Commission) Ill. Rev. Stat. 1961, chap. 48, par. 138.19.

The constitutional provisions here invoked were not intended to operate as a straitjacket to preclude this kind of gradual procedural development. As we said in *Donoho* v. *O'Connell's, Inc.* 18 Ill.2d 432, 437, "the validity of legislation does not depend upon complete comprehensiveness, nor does the constitution require that it conform to an ideal pattern of orderliness." So it is that the Civil Practice Act is applicable to "all civil proceedings, both at law and in equity, in courts of record, except in attachment, ejectment, eminent domain, forcible entry and detainer, garnishment, habeas corpus, mandamus, ne exeat, quo warranto, replevin, foreclosure of mortgages or other proceedings in which the procedure is regulated by separate statutes." Ill. Rev. Stat. 1961, chap. 110, par. 1; see, *City of Breese* v. *Abel,* 359 Ill. 579; *Toledo, Peoria and Western Railroad* v. *Illinois Commerce Com.* 375 Ill. 35.

I do not understand what is meant by the statement in the opinion that "The legislative history of these provisions

yields no clue to the need for summary action." In this State, in the absence of a statutory preamble, or the report of a legislative commission, there simply is no legislative history to explain the purpose of legislation. And instances in which bills contain preambles, or in which there are reports of commissions, are rare exceptions, and not the rule.

Surely the majority cannot mean to hold that the validity of legislation depends upon an existence of some kind of legislative history apart from the ordinary legislative record contained in the Journals of the House and Senate. It may be that the majority has been misled by suggestions contained in the brief of the appellant. It is there stated: "There is no report of any of the Committees evidencing any reason given before a Committee for the change in practice affected by the measures. The Committee records are silent with respect to the substance of any testimony given for or against the Bills." It is difficult to understand what is meant by the appellants' statement that no report of any committee of the House or Senate gave any reasons for the change effected by the bills. Reports of legislative committees do not give reasons. They consist of a simple recommendation that the bill do pass or that the bill do not pass.

Mr. Justice Hershey joins in this dissent.